FILED
2022 MAR 23
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| BRANDEE C.,<br><br>               Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>               Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING ALJ DECISION<br><br><br>Case No. 1:20-cv-00129-CMR<br><br>Magistrate Judge Cecilia M. Romero |

Plaintiff Brandee C. (Plaintiff), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act) (ECF 25, Plaintiff's Opening Brief (Pl. Br.)). After careful review of the entire record, the parties' briefs, and relevant authority, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and is therefore AFFIRMED.[1]

### I.     STANDARD OF REVIEW

The scope of the court's review of the Commissioner's final decision is specific and narrow. As the Supreme court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id.* at 1154. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable

---

[1] The court finds that oral argument is not necessary and will decide this matter on the basis of written memoranda. *See* DUCivR 7-1(g).

mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).  Under this deferential standard, this court may neither reweigh the evidence nor substitute its judgment for that of the ALJ.  *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).  The court's inquiry, "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close."  *Biestek*, 139 S. Ct. at 1157.

## II.  BACKGROUND

Plaintiff was 38 years old on her disability onset date of January 25, 2016 and when she applied for disability insurance benefits (DIB) on June 10, 2016 (Certified Administrative Transcript (Tr.) 68).  She alleged disability due to anaphylactic shock, shoulder dislocation, subluxation and labrum tear, multiple disc conditions, arthritis, posttraumatic stress disorder (PTSD), major depressive disorder, anxiety/panic attacks, irritable bowel syndrome (IBS), multiple medication fatigue/brain fog, and chronic urticaria (*see* Tr. 67–68).

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (Tr. 9–34).  *See* 20 C.F.R. § 404.1520(a)(4).  In a decision dated April 25, 2019, the ALJ determined at step two that Plaintiff had severe impairments of right shoulder impingement syndrome, status post right rotator cuff repair, lumbar degenerative disc disease, cervical degenerative disc disease, traumatic brain injury (TBI), PTSD, anxiety disorder, depressive disorder, and mood disorder (Tr. 14).  At step three, the ALJ considered Plaintiff's physical impairments under Listings 1.02, 1.04, and 11.18, and her mental impairments under Listings 12.04, 12.06, and 12.15 and paragraph B and C criteria, finding none were satisfied (Tr. 15–17).  The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work with additional physical and mental limitations (Tr. 17-25).  *See id.* §

2

404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."). The ALJ found at step five that this RFC would allow Plaintiff to perform other work existing in significant numbers in the national economy (Tr. 25–26). The ALJ thus concluded that Plaintiff was not disabled (Tr. 26). *See id*. § 404.1520(a)(4)(v). The Appeals Council then denied Plaintiff's request for review (Tr. 1–6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a).[2] This appeal followed.

### III. DISCUSSION

#### A. Substantial evidence supports the ALJ's step three findings.

Plaintiff challenges the ALJ's finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing, arguing that Plaintiff's impairments meet Listings 1.18, 1.16, 11.18, 12.02, 12.04, 12.06, and 12.15 (Pl. Br. 25 at 8–20). The listings describe impairments that the agency considers severe enough to prevent an individual from doing any gainful activity. 20 C.F.R. § 404.1525(a). At step three, an ALJ will find that a claimant's impairment meets a listing only "when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the [12-month] duration requirement." *Id*. (c)(3). "For a claimant to show that [her] impairment [meets] a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Medical equivalence, on the other hand, requires a claimant to provide medical evidence showing that an impairment is "at least equal in severity and duration to the criteria of any listed

---

[2] Code of Federal Regulations (C.F.R.) citations are to the 2020 edition, which was in effect at the time of the ALJ's May 2020 decision.

3

impairment." 20 C.F.R. § 404.1526(a). Medical equivalence must be based on medical findings. Social Security Ruling (SSR) 86-8, 1986 WL 68636, at *3–4. "The mere accumulation of a number of impairments will not establish medical equivalency." *Id*. at *4. If an ALJ finds that a claimant's impairments do not medically equal a listing, he need only provide a statement to that effect; no further articulation is required. SSR 17-2p, 2017 WL 3928306, at *4.

It is Plaintiff's burden to point to specific medical evidence definitively establishing that her impairments met or medically equaled a listing. *See Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) ("To show that an impairment or combination of impairments meets the requirements for a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment."). Plaintiff's own allegations are insufficient to establish that her impairments met or medically equaled a listing. 20 C.F.R. § 404.1529(d)(3). Because Plaintiff has failed to identify medical records confirming she suffered from all of a listing's criteria, the court rejects her step-three arguments. *See Aslan v. Colvin*, 637 F. App'x 509, 509 (10th Cir. 2016). Moreover, as further explained below, substantial evidence supports the ALJ's finding that Plaintiff did not meet or medically equal a listing.

1. **Plaintiff's physical impairments**

The ALJ found that Plaintiff's physical and neurological impairments did not meet or medically equal listing 1.02 (for major dysfunction of a joint), listing 1.04 (for disorders of the spine), and listing 11.18 (for traumatic brain injury (TBI)) (Tr. 15–16). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.02, 1.04, 11.18. Plaintiff argues that the ALJ should have found that she met or medically equaled listings 1.18, 1.16, and 11.18 (Pl. Br. 10–12).[3] Listings 1.18 and 1.16

---

[3] Plaintiff does not challenge the ALJ's finding that her impairments did not meet or medically equal listing 1.02 or listing 1.04 (*see* Pl. Br. 8–20). She has thus waived any argument in relation to these listings. *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits an issue it does not support with 'legal authority or argument.'" (quoting *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1244 (10th Cir. 2003))).

only apply to cases decided on or after April 2, 2021. *Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020) (final rules). The ALJ decided this case in 2019 (Tr. 26). Listings 1.16 and 1.18 were not in effect at the time the ALJ decided this case and are therefore inapplicable. As to Plaintiff's remaining argument, substantial evidence supports the ALJ's finding that Plaintiff's physical and neurological impairments did not meet or medically equal listing 11.18.

A claimant meets listing 11.18 by providing medical evidence sufficient to meet one of its subparts A or B. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.18. Listing 11.18A requires evidence of disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least three consecutive months after the TBI. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.18A. The ALJ found that Plaintiff did not provide evidence establishing these elements of the listing (Tr. 16). Indeed, the record did not show that Plaintiff had difficulty standing from a seated position, balancing, or using her upper extremities due to a TBI (*see, e.g.*, Tr. 302, 1539, 1686). When Plaintiff reported balance difficulty, she attributed it to her hip problem, not a TBI (*see* Tr. 1790).

To meet Listing 11.18B, Plaintiff was required to provide medical evidence showing marked limitation in physical functioning and in one of the following areas of mental functioning, persisting for at least three consecutive months after a TBI: understanding, remembering, or applying information; interacting with others; or concentrating, persisting, or maintaining pace; or adapting or managing oneself. *Id*. § 11.18B. The ALJ found that Plaintiff did not meet any of these requirements (Tr. 16). "You may have a marked limitation in your physical functioning when your neurological disease process causes persistent or intermittent symptoms that affect your abilities to independently initiate, sustain, and complete work-related

activities, such as standing, balancing, walking, using both upper extremities for fine and gross movements, or results in limitations in using one upper and one lower extremity." *Id*. § 11.00G2a.  There is no evidence that Plaintiff's TBI caused the limitations required by listing 11.18B.  Moreover, as discussed below in relation to the ALJ's evaluation of Plaintiff's mental impairments, the ALJ reasonably found only mild and moderate (not marked) limitations in the areas of mental functioning (Tr. 16–17).  Therefore, substantial evidence supports the ALJ's finding that Plaintiff did not meet or medically equal listing 11.18.

### 2. Plaintiff's mental impairments

The ALJ found that Plaintiff's mental impairments did not meet or medically equal listing 12.04 (for depressive, bipolar, and related disorders), listing 12.06 (for anxiety and obsessive-compulsive disorders), or listing 12.15 (for trauma- and stressor-related disorders) (Tr. 16).  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06, 12.15.  Plaintiff argues that the ALJ should have found that her mental impairments met or medically equaled these listings, and that her impairments also met or medically equaled listing 12.02 (for neurocognitive disorder) (Pl. Br. 13–20).  Notwithstanding her arguments, the ALJ's finding that her mental impairments did not meet or medically equal a listing is supported by more than a mere scintilla of evidence and thus survives the court's highly-deferential review.  *See Biestek*, 139 S. Ct. at 1154.

Listings 12.02, 12.04, 12.06, and 12.15 "have three paragraphs, designated A, B, and C; [a claimant's] mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A2.  Paragraph A includes the medical criteria that must be present in the medical evidence.  *Id*. § 12.00A2a.  Paragraph B provides functional criteria to evaluate how a claimant's mental disorder limits her functioning.  *Id*. § 12.00A2b.  Paragraph C provides criteria the agency uses to

evaluate "serious and persistent mental disorders." *Id*. § 12.00A2c. Substantial evidence supports the ALJ's finding that Plaintiff's mental impairments did not satisfy the criteria under either Paragraph B or Paragraph C.

          a)        **Paragraph B criteria**

To satisfy the Paragraph B criteria, a claimant must demonstrate that her mental disorder results in extreme limitation in one, or marked limitation in two, of four areas. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A2b. Here, the ALJ found that Plaintiff had moderate limitation in one area (concentrating, persisting, or maintaining pace) and mild limitation in three areas (understanding, remembering, or applying information; interacting with others; and adapting or managing oneself) (Tr. 16–17). This finding is supported by substantial evidence.

The ALJ found that Plaintiff had mild limitation in understanding, remembering, or applying information (Tr. 16). He recognized that she reported good days and bad days in relation to her memory (Tr. 16). However, he considered the mental status findings showing normal memory and above average intelligence (Tr. 16; *see, e.g.*, Tr. 1310, 1318, 1433, 1455, 1557, 1637, 1662, 1747, 1784, 1844, 1856, 1858, 1865, 1869, 1888, 1904, 1947, 1950, 1955, 2005, 2008, 2011, 2014, 2017, 2023, 2029, 2085, 2097, 2101, 2105, 2109, 2114). He cited Plaintiff's ability to drive a car (showing she remembered how to operate a vehicle and follow the rules of the road), pay bills, count change, handle a bank account, and use a checkbook (Tr. 16; *see* Tr. 300, 308, 348). The ALJ also discussed Plaintiff's ability "to remember her personal history of symptoms, treatment, and work history over a period of years" (Tr. 16).

The ALJ found that Plaintiff had mild limitation in interacting with others (Tr. 16). He recognized that she reported some social isolation and panic attacks (Tr. 16). However, the ALJ discussed Plaintiff's admitted ability to talk on the phone, attend family events, get along with

others, and go to a store (Tr. 16-17; *see* Tr. 301–03).  Plaintiff was "usually described as pleasant and cooperative, having normal speech, making appropriate eye contact, fairly well groomed, and in no acute distress" (Tr. 17; *see, e.g.*, Tr. 493, 507–08, 805, 1073, 1092, 1097, 1111, 1123, 1419, 1537, 1598, 1614, 1640, 1646, 1686, 1691, 1697, 1783, 1858, 1861, 1865, 1934, 2126, 2130, 2137).  The ALJ also observed that Plaintiff "was cooperative and responded to questions posed to her by her representative and the" ALJ at the hearing (Tr. 17).

The ALJ found that Plaintiff had moderate limitation in concentrating, persisting, or maintaining pace (Tr. 17).  He recognized her reported difficulty with concentration, completing tasks, and paying attention, as well as providers' observation of an agitated and anxious mood (Tr. 17).  However, he noted that there was no evidence of hallucinations (Tr. 17; *see* Tr. 489, 1533, 1742).  The ALJ found no indication that Plaintiff required redirection to stay on topic (Tr. 17).  Indeed, while she had impaired attention or concentration at some appointments, she had normal attention and concentration at others (*see, e.g.*, Tr. 508, 1557, 1747, 2002, 2006, 2008, 2011, 2097, 2106, 2114).  Plaintiff was not prescribed or taking medication for attention deficits (Tr. 17).  When CDI[4] investigators met with Plaintiff, she was able to focus and track the conservation (Tr. 17; *see* Tr. 1686).  She "was able to participate during the length of the hearing, which lasted for approximately 52 minutes" (Tr. 17).

Finally, the ALJ found that Plaintiff had mild limitation in adapting or managing herself (Tr. 17).  He recognized that she reported she could not handle stress, cried, "check[ed] out sometimes," and had difficulty adapting to changes in routine (Tr. 17).  However, the ALJ discussed clinical findings describing her as alert, oriented, fairly well-groomed, well-developed,

---

[4] The Cooperative Disability Investigations (CDI) program investigates cases of suspected disability fraud. *See* Cooperative Disability Investigations, Social Security Administration Office of the Inspector General, https://oig.ssa.gov/cdi/ (last visited Mar. 23, 2022).

and having fair judgment (Tr. 17; *see, e.g.*, Tr. 493, 507–08, 805, 1073, 1092, 1097, 1111, 1123, 1419, 1537, 1598, 1614, 1640, 1646, 1686, 1691, 1697, 1747, 1783, 1858, 1861, 1865, 1934, 2126, 2130, 2137). The ALJ cited the CDI investigators' observation that Plaintiff "was able to have a conversation without signs of panic, anxiety, or nervousness" (Tr. 17; *see* Tr. 1686).

The ALJ's finding that Plaintiff did not meet the Paragraph B criteria was consistent with the prior administrative medical findings of State agency psychological consultants Drs. Popma and Cohn. While the ALJ's step-three findings differed in some respects from the reviewing psychologists' findings, he agreed with them that Plaintiff experienced mild-to-moderate limitations in the Paragraph B criteria and thus did not meet a mental impairment listing (*see* Tr. 79-80, 105). Substantial evidence therefore supports the ALJ's finding that Plaintiff's impairments did not satisfy the Paragraph B criteria.

### b)  Paragraph C criteria

To satisfy the Paragraph C criteria, the claimant's mental disorder must be "serious and persistent"; "that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A2c; *see id*. § 12.00G2b, c (explaining the criteria of C1 and C2). The ALJ found that the evidence did not satisfy the criteria of both C1 and C2 (*see* Tr. 17). Specifically, the ALJ found that "[t]he record does not demonstrate ongoing medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that diminishes the symptoms and signs of [Plaintiff's] mental disorder, with [Plaintiff] achieving only marginal adjustment" (Tr. 17). *See id*. § 12.00G2b, c. While Plaintiff demonstrated ongoing mental health therapy, she did not display marginal adjustment. *See id*. § 12.00G2c (defining "marginal adjustment"). There is no evidence that Plaintiff was unable to

9

function outside of her home or a more restrictive setting without substantial psychosocial supports. Perhaps the best example of this was her ability to vacation in Mexico in late 2017 (*see* Tr. 1912). She also went a concert in mid-2018 (*see* Tr. 2014). In addition, Plaintiff went to a community swimming pool and sauna every week (Tr. 52). She also went shopping in stores several times per month (Tr. 300, 348).

The ALJ's finding that Plaintiff did not meet the Paragraph C criteria was consistent with the prior administrative medical findings made by State agency psychological consultants Drs. Popma and Cohn. Both psychologists considered whether Plaintiff's mental impairments met the Paragraph C criteria and concluded that they did not (Tr. 80, 105). Substantial evidence thus supports the ALJ's finding that Plaintiff's mental impairments did not meet the Paragraph C criteria. In sum, the ALJ's finding that Plaintiff's impairments or combination of impairments do not meet or medically equal a listing is supported by substantial evidence.

### B.  The ALJ reasonably assessed Plaintiff's RFC.

Plaintiff challenges the ALJ's RFC assessment, arguing that it "contradicts the claimant's testimony, the medical evidence, and the testimony and opinion of the vocational expert" (Pl. Br. at 21–22). The ALJ found that Plaintiff had established that she had the RFC to perform a range of unskilled sedentary work (Tr. 18). In reaching that conclusion, the ALJ found that Plaintiff's reported symptoms were inconsistent with other evidence and weighed the medical opinions (*see* Tr. 18–25). As explained below, more than a mere scintilla of evidence supports the ALJ's assessment of Plaintiff's RFC. *See Biestek*, 139 S. Ct. at 1154.

#### 1.  The ALJ reasonably evaluated Plaintiff's reported symptoms.

Plaintiff argues that she cannot perform sedentary work because of the symptoms associated with her "physical, emotional, and mental conditions," which "are not expected to

improve with treatment" (Pl. Br. at 21).  The RFC assessment must address the claimant's reported symptoms (previously called the "credibility" assessment).  *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304; *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").  Plaintiff claimed to experience severe, potentially disabling, symptoms (*see* Tr. 18 (ALJ's summary of Plaintiff's reported symptoms)).  The ALJ found, however, that Plaintiff's reported symptoms were inconsistent with other evidence (Tr. 22).  This finding is due great deference by the court.  *See White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).  The ALJ gave several well-supported reasons for concluding that Plaintiff's reported symptoms were not as severe as she claimed.

First, the ALJ discussed objective medical evidence that was inconsistent with Plaintiff's reported symptoms.  *See* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence."); SSR 16-3p, 2017 WL 5180304, at *5 ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]").  The ALJ cited clinical findings of normal right shoulder range of motion; normal strength, reflexes, and coordination; normal gait; and a normal right shoulder x-ray (Tr. 19, 20, 22–23; *see, e.g.*, Tr. 805, 809, 1310, 1318, 1419, 1433, 1444, 1539, 1614, 1637, 1646, 1713, 1754, 1788, 1801, 1874, 1885, 1915, 1926, 1934, 2014, 2017, 2054, 2105–06, 2109–10, 2114, 2126–27, 2137).  The ALJ also cited 2016 findings by a CDI unit that Plaintiff walked out of her home without assistance, did not appear to be in pain or discomfort, used her arms, and pointed with her hands (Tr. 19; *see* Tr. 1686).

Regarding Plaintiff's mental impairments, the ALJ discussed findings of normal consciousness, mood, insight, and judgment (Tr. 21, 23; *see* Tr. 1310).  A neuropsychological

evaluation showed low average intellectual functioning (Tr. 21; *see* Tr. 1549). The CDI investigators observed that Plaintiff engaged in normal conversation without signs of panic, anxiety, or nervousness; was able to focus and had no issues recalling events; was focused and attentive; provided thoughtful and organized answers; and could recall events and track the conversation without difficulty (Tr. 22; *see* Tr. 1686). The ALJ considered 2017 findings of normal behavior, speech, mood, affect, thought processes, thought content, attention, memory, insight, and judgment, as well as "above average" intelligence (Tr. 22; *see* Tr. 1747, 1754). The ALJ also discussed 2018 observations of intact memory, normal thought process, intact attention, and fair insight and judgment (Tr. 22; *see* Tr. 2114).

In addition to objective medical evidence, the ALJ considered the efficacy of Plaintiff's treatment. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (ALJ considers the effectiveness of treatment when evaluating symptoms). The ALJ found that Plaintiff's statements were inconsistent with evidence showing that her conditions were controlled or responsive to treatment (Tr. 22). The ALJ noted, for example, Plaintiff's reports that anti-inflammatory medications, physical therapy, and injections helped her shoulder pain (Tr. 19; *see* Tr. 413, 1925); nerve blocks relieved 80% of her back pain (Tr. 23; *see* Tr. 1651); her PTSD symptoms improved with medication (Tr. 21, 22, 23; *see* Tr. 1063, 1572, 1808); her migraine headaches responded fairly well to injections (Tr. 21; *see* Tr. 1432); and her mood improved with therapy (Tr. 22; *see* Tr. 2016).

The specific evidence of improvement noted by the ALJ was representative of the record as a whole. *See Putnam v. Comm'r, SSA*, 789 F. App'x 694, 698 (10th Cir. 2019) ("Although the ALJ specifically cited these three exhibits, the record contains other evidence supporting his conclusions."). For example, Plaintiff's Xolair injections significantly reduced her allergic reactions (*see* Tr. 1053, 1060, 1063, 2120); providers often noted that her mental symptoms were

12

fairly well controlled (*see* Tr. 1311, 1839, 2070); she reported significant improvement with treatment for her neck, back, and hip joints (*see* Tr. 1420, 1614, 1635, 1640, 1646, 2125, 2136); and her memory abilities "improved dramatically" with therapy (Tr. 1828).

The evaluation of a disability claimant's symptoms is "peculiarly the province of the finder of fact." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Substantial evidence supports the ALJ's finding in this case that Plaintiff's reported symptoms were inconsistent with other evidence. The court therefore declines Plaintiff's invitation to re-weigh the evidence and reach different conclusions about what it showed. *See Hendron*, 767 F.3d at 954.

### 2. The ALJ reasonably weighed the medical opinions

Plaintiff argues that the ALJ's RFC finding of sedentary works contradicts the opinions of Plaintiff's medical providers (Pl. Br. 25 at 21). Under the regulations governing this case, an ALJ must consider every medical opinion when assessing a disability claimant's RFC. *See* 20 C.F.R. § 404.1527.[5] Here, there were four disparate opinions relevant to Plaintiff's physical abilities: (1) Advanced practice registered nurse (APRN) Jody Fowers opined that Plaintiff could not work until at least the end of May 2016 (Tr. 512); (2) Treating orthopedist Dr. Hicken opined that Plaintiff should not lift more than 50 pounds or do any overhead lifting (Tr. 411); (3) State agency medical consultant Dr. Holtey opined that Plaintiff had abilities consistent with a range of light work (Tr. 81-83); and (4) State agency medical consultant Dr. Tucker opined that Plaintiff had abilities consistent with a range of light work (Tr. 107–09). There were also three opinions relevant to Plaintiff's mental abilities: (1) Therapist Sandy Watson opined that Plaintiff

---

[5] The agency has issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules). Plaintiff filed her claim in 2016 (*see* Tr. 222). The court's review is therefore governed by 20 C.F.R. § 404.1527.

"should qualify for disability" (Tr. 1472); (2) State agency psychological consultant Dr. Popma opined that Plaintiff was able to persist at tasks that could be learned in up to one month on the job (Tr. 86); and (3) State agency psychological consultant Dr. Cohn opined that Plaintiff was able to persist at tasks that could be learned in up to one month on the job (Tr. 112).

The ALJ was tasked with resolving the conflicts between these opinions. *See* 20 C.F.R. § 404.1527. The ALJ considered and weighed all of these opinions (*see* Tr. 23-24), and ultimately concluded that Plaintiff was less physically limited than opined by Ms. Fowers but more limited than opined by Drs. Hicken, Holtey, and Tucker (*see* Tr. 18). The ALJ found that Plaintiff had mental limitations consistent with the opinions of Drs. Popma and Cohn (*see* Tr. 18). Substantial evidence therefore supports the ALJ's finding that Plaintiff had abilities consistent with a range of unskilled sedentary work.

Plaintiff next argues that the ALJ's RFC assessment was inconsistent with the vocational expert's testimony (Pl. Br. 21–22). However, an ALJ, not a vocational expert, is responsible for determining a claimant's RFC. *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000). The ALJ proposed several hypotheticals to the vocational expert; some of them were less limiting than the ALJ's ultimate assessment of Plaintiff's RFC, and some of them were more limiting (*see* Tr. 59-63). The ALJ ultimately relied on the vocational expert's testimony that a hypothetical individual who was restricted to a range of unskilled sedentary work could work as an optical goods final assembler, fishing-reel assembler, and toys, games, and sports equipment stuffer, together encompassing over 100,000 nationwide positions (Tr. 26; *see* Tr. 61–62). "The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by [P]laintiff but not accepted by the ALJ as supported by the record." *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995).

The court recognizes that "the record contains support for both the notion that [Plaintiff] has extreme deficiencies . . . and the notion that [her] . . . limitations are not that severe." *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).  In cases like this, where the evidence is mixed, "[t]he ALJ was entitled to resolve such evidentiary conflicts and did so." *Id*.  The ALJ thoroughly summarized the record and reached reasonable conclusions based on the evidence, including his finding that Plaintiff's impairments did not meet or medically equal a listing and his assessment of Plaintiff's RFC.[6]

### IV.   CONCLUSION

Because the ALJ's decision is supported by substantial evidence and legally sound, it is AFFIRMED.  Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 23 March 2022.

*[signature: Cecilia M. Romero]*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah

---

[6] Plaintiff finally argues that remand for an immediate award of benefits is the appropriate remedy (Pl. Br. 26).  The Supreme Court has clarified that courts are required, "except in rare circumstances, . . . to remand to the agency for additional investigation or explanation." *I.N.S. v. Orlando-Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).  Payment is appropriate only when additional fact-finding would serve no purpose and the record "fully supports" that Plaintiff is disabled "as a matter of law."  *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989).  That is not the case here.